# IN THE COURT OF APPEALS OF IOWA

No. 26-0227
Filed April 15, 2026

**In the Interest of S.L. and D.L., Minor Children,**

**S.L., Mother,**
Appellant.

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Scott Strait, Judge.

**AFFIRMED**

Katie E. Johnson of Katie Johnson Law, Council Bluffs, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, attorneys for appellee State.

Sara E. Benson of Meldrum & Benson Law, Council Bluffs, attorney and guardian ad litem for minor children.

Considered without oral argument
by Tabor, C.J., and Langholz and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Ten-year-old S.L. and eleven-year-old D.L. compared their lives to being on a roller coaster—"they go back with mom and/or dad, get removed, get visits, then [their parents] go to jail and then they don't get visits. Then they start doing visits again. They go back home and get removed again." Indeed, in the past decade, the sisters were removed from their mother's custody five times, largely because of her addiction to methamphetamine.

After the fifth removal and with little progress from the mother in addressing her substance use, the juvenile court terminated her parental rights.[1] The mother challenges termination, arguing that the State did not prove a statutory basis. She also contends that the court should have applied exceptions to preserve her rights. Finding clear and convincing evidence that termination was proper under Iowa Code section 232.116(1)(*l*) (2025) and that no exception applied, we affirm.[2]

## I.    Facts and Prior Proceedings

This family has a chaotic history. The girls were first removed from their parents' custody when they were toddlers. The juvenile court adjudicated them as children in need of assistance (CINA) because the parents were using methamphetamine. That CINA case was open from May 2016 through September 2017. Another removal occurred in December 2018 when the parents again used methamphetamine and exposed the children to

---

[1] The court also terminated the father's rights, but he does not appeal.

[2] We review these proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Under this standard of review, "we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us." *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024) (citation omitted). We also give deference to the juvenile court's factual findings, especially on credibility issues. *Id.*

domestic violence. That second CINA case closed in February 2020. But a third removal followed in March 2021, again based on the mother's use of methamphetamine while caring for her daughters. That CINA case closed in February 2022. The girls were removed for the fourth time just one month later when the mother relapsed on methamphetamine and engaged in self-harm. That fourth case closed in July 2023.

The pattern continued. Just over a year later, the Iowa Department of Health and Human Services intervened again when the father assaulted the mother in the presence of the children. Although the department's September 2024 investigation resulted in a finding of child abuse against the father, S.L. and D.L. stayed in the home without a new CINA adjudication. But not for long. In January 2025, the department learned the parents were again using methamphetamine. That same month, the police took the children into protective custody when they were left in the care of a registered sex offender. In March 2025, the juvenile court adjudicated the girls as CINA for the fifth time.

At first, D.L. and S.L. lived with their adult sister and her boyfriend, who according to the girls' guardian ad litem (GAL), "had their hearts in the right place." But that placement did not work out because "there were too many concerns with the girls missing therapy and medical appointments despite constant reminders." In August 2025, the girls went to live with their aunt, who provided a stable and secure environment.[3]

The girls' visits with their mother went well "for the most part." Service providers reported that she came prepared and made positive strides

---

[3] By the time of the termination hearing in January 2026, the aunt was exploring the possibility of adoption.

in her parenting. Yet both girls continued to experience symptoms related to their past traumas. And S.L. "expressed increased sadness and anxiety" after seeing her mother. The record also shows visitation had to be cancelled when the mother was twice arrested and spent time in jail. According to the GAL, S.L. and D.L. "both crave stability."

Key to this appeal, the mother counted little progress in addressing her addiction. She had a substance-use evaluation in October 2024. She received a diagnosis of severe amphetamine-type substance-use disorder. In September 2025, she completed inpatient treatment but relapsed. From March through December 2025, she tested positive for methamphetamine twice and missed more than a dozen random drug screens. She did have two negative tests in July and two more in November and December.

In November 2025, the State petitioned for termination of the mother's parental rights, citing Iowa Code section 232.116(1), paragraphs (e), (f), (i), and (*l*). After a hearing in January 2026, the juvenile court issued its order—finding the State did not prove the grounds alleged in paragraphs (f) and (i) but terminating the mother's rights under paragraphs (e) and (*l*). The mother appeals.

## II.    Analysis

Termination of parental rights is a three-fold process. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, the State must prove a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must show termination is in the child's best interests under section 232.116(2). *Id.* Third, parents may rely on exceptions to termination under section 232.116(3). *Id.* We address only the issues that a parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother challenges both grounds for termination under section 232.116(1) and briefly touches on two exceptions under section 232.116(3). We start with the statutory grounds. We may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we focus on paragraph (*l*), which authorizes termination when

> [t]he court finds that all of the following have occurred:
>
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>
> (2) The parent has a severe substance use disorder as described by either of the following:
>
> (a) The severe substance use disorder meets the definition for that term as defined in the most current edition of the diagnostic and statistical manual prepared by the American psychiatric association, and the parent presents a danger to self or others as evidenced by prior acts.
>
> (b) The disorder is evidenced by continued and repeated use through the case, the parent's refusal to obtain a substance use disorder evaluation or treatment after given the opportunity to do so, and the parent presents a danger to self or others as evidenced by prior acts.
>
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(1)(*l*).

The mother contests the State's proof that she has a severe substance-use disorder that "poses a danger to herself or to her children." She acknowledges evidence showing she used methamphetamine during this CINA case. But she pivots to the "periods of time where she was negative for all substances on drug screening tests" and claims that her admission to having an addiction shows a willingness to get help.

As the juvenile court noted, the mother "has demonstrated no ability to maintain prolonged sobriety." And the court was not persuaded by her testimony that she was committed to making the necessary changes. We defer to that credibility finding.

We find that the mother has a severe substance use disorder as defined by the diagnostic and statistical manual (DSM-5) prepared by the American Psychiatric Association. Beyond that diagnosis, the mother presents a danger to herself and her daughters if they are returned to her custody, as revealed by her past relapses. We often say that evidence of a parent's past performance is "indicative of the quality of the future care that parent is capable of providing." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (citation omitted). And as the juvenile court observed, "This case is, unfortunately, a glaring example of that axiom."

Because the evidence exposed a dim view of the mother's prospects for long-term sobriety, and considering the toll that the family's turmoil has taken on her daughters' mental health, we find clear and convincing evidence that S.L. and D.L. cannot be returned to her custody within a reasonable time. These children need stability. Or in the apt words of the juvenile court, "the 'roller coaster' needs to stop."

Finally, the mother cites section 232.116(3) and argues that "termination should not have occurred due to the closeness of the parent-child relationship, their strong bond, and due to the children being placed with a relative." Assuming without deciding that her barebones argument is enough to present those issues, we find no permissive exception applies. The mother does not carry her burden to show that termination would be harmful to either girl because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c); *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

And the mother does not show that the children were in the "legal custody" of their aunt. *See* Iowa Code § 232.116(3)(a); *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (distinguishing relative placement from "legal custody").

**AFFIRMED.**